26 C.C.P.A. (Patents)

## In re HOWARD.

### Patent Appeal No. 4157.

Court of Customs and Patent Appeals.

June 5, 1939.

Bates, Golrick & Teare, of Cleveland, Ohio (Albert R. Teare and Walter F. Liesegang, both of Cleveland, Ohio, and Donald A. Gardiner, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, for the reasons hereinafter stated, claims 14, 15, and 18 to 21, inclusive, of appellant's application for a patent. Claims 16 and 17 were allowed.

Claims 14 and 18 are illustrative of the involved claims and read as follows:

"14. A method of making a paint brush comprising forming a tuft, placing it between two mold cavities so that a portion of the tuft enters each cavity, filling the cavity with plastic material, applying sufficient heat and pressure to the material so as to make the handle a one-piece structure which extends in the same general direction as the bristles and so as to force the material to enter the interstices between the bristles, and thereby unite the handle to the tuft."

"18. A brush comprising a handle made of a thermo-plastic, substantially non-elastic material, a socket integrally formed within said handle, a tuft of hairs within said socket and extending a substantial distance beyond the forward edge of said socket, said tuft of hairs being clampingly held between the forward edges of said socket."

The cited references are:

Estabrook, 135,415, February 4, 1873.
Read, 372,385, November 1, 1887.
Dennin, 826,408, July 17, 1906.
Contencin (French), 632,987, October 18, 1927.
Simmons, 1,875,167, August 30, 1932.
Carpenter, 2,075,570, March 30, 1937.

Claims 18 to 21, inclusive, were copied by appellant from the patent to Carpenter.

Appellant's alleged invention is concisely described in the examiner's statement as follows: "Applicant's invention relates to the art of brush making, and particularly to that type of brush wherein bristle but-s are secured in a molded plastic composition such as rubber or phenolic condensate, which is capable of being deformed under pressure and heat, and the molded plastic mass used as the handle for the brush. Applicant preforms a bristle tuft within a metal ferrule and lays the preformed tuft in one section of a mold, then fills the halves of the mold with the moldable material, and superimposes one of the halves of the mold upon the other half, when, upon sufficient application of heat and pressure, the composition handle if formed and the material thereof is forced through the openings in the ferrule into the bristles, and also into the interstices between the but-s of the bristles, resulting in a molded handle brush. The process and the general product thereof are quite old and common and are shown generally in the art of record. * * *"

The patents to Simmons and Estabrook do not seem to have any relevancy to the questions before us, and therefore require no discussion.

The patent to Read relates to brushes and a method of making the same; a tuft of bristles is formed, the butts of which bristles are cemented together; this tuft is brought into register with the grooved end of a suitable handle, and around the joint thus formed is wound a strip of unvulcanized rubber; the joint of the brush head and handle is then placed in a mold and is there subjected to heat and pressure, causing the rubber to be forced "hard upon and around the butts of the brush fibers and also into the grooves and around the head of the handle."

The patent to Dennin shows, in the manufacture of a brush, the application of plastic material under pressure to fill the spaces around the butt ends of the bristles.

The patent to Contencin discloses a process for making shaving brushes. The bundle of bristles is placed in a mold; the mold is then turned head downward and in the opposite end a plastic material is placed which flows downward about the bristles, which adhere to said material.

The patent to Carpenter shows a brush the handle of which is made of a thermoplastic material, preferably hard rubber. In the forward end of the handle a socket is formed into which is placed a tuft of hairs which has been dipped in a thermoplastic cement material. The socket end of the handle is then heated until it becomes moderately plastic, after which it is squeezed between the jaws of a pressing device, which impresses thereon a slight channel and at the same time forces the edges of the handle inwardly to clamp the hairs more securely in place. The completed brush is then cooled. The patent states:

"* * * It may be further noted that the retaining edges 7 and 8, as shown in Figure 1, are curved slightly outwardly so that when the clamping pressure is applied at 6, this outward curve will be reversed and tend to curve inwardly, whereby to clamp the tuft of hairs more securely in place.

"* * * Furthermore, the forward retaining edge of the hair-retaining portion of the brush lends itself to a strong clamping action such as cannot ordinarily be achieved in metal ferrule brushes. * * *

"It will be obvious that the term "thermo-plastic substance," as used in the specification, is intended to cover all that class of solid substances which are relatively hard and rigid at ordinary temperatures, but which become plastic upon heating."

Claim 14 was rejected by the examiner as unpatentable over the patent to Contencin, in view of the patent to Dennin.

The remaining claims were rejected by the examiner as not reading upon appellant's disclosure. The examiner further held that if said claims were to be construed as appellant claims, they would read upon the cited prior art.

The Board of Appeals affirmed the decision of the examiner without separate discussion of claim 14. In its decision the board stated: "* * * It is difficult to see wherein the disclosure of the present application differs in any way from what is shown by the Read patent. Obviously, if the term "clampingly" used in the claims copied from the Carpenter patent be construed as broad enough to cover a construction wherein the handle is united to the tuft or hairs by a molding operation, accompanied by pressure, they would be met by the prior art. It seems to us that the operative relationship set up by the Carpenter claims is a different one than involved in a molded structure."

It will thus be seen that, while the examiner rejected claim 14 on Contencin in view of Dennin, the board seemed to be of the opinion that appellant's disclosure differs in no way from what is shown in the Read patent. We are in agreement with this view.

Appellant contends that inasmuch as Read uses an unvulcanized rubber cement, his disclosure differs from that of appellant in a material way; that unvulcanized rubber has elastic properties, while plastic material, which is not elastic, is used by appellant.

We would observe that appellant's disclosure does not use the term "plastic" or "thermo-plastic." Nevertheless, it is stated that sawdust rubber or a phenolic condensate capable of being deformed under temperature or pressure is used, from which we may infer that the material is plastic or may be made so under temperature. However, if it be true, as appellant's counsel asserts, that unvulcanized rubber is elastic, we call attention to the fact that in the patent to Read one step of the

process is the vulcanizing of the unvulcanized rubber. Moreover, we are not satisfied that the assertion that unvulcanized rubber is elastic is correct. If the quality of unvulcanized rubber is a matter of common knowledge, of which we may take judicial notice, we call attention to the following:

In "Cellulose, Cellulose Products and Artificial Rubber," by Bersch, at page 311, it is stated: "With reference to their properties, elastic rubber masses are a medium between rubber vulcanized in the ordinary way and hard rubber, and by a suitable change in their quantitative compositions, they may be made either harder or more elastic."

In Van Nostrand's Scientific Encyclopedia, page 973, it is stated: "Unvulcanized rubber in pseudo solution is used as adhesive. Vulcanized rubber is remarkable for its resistance to abrasion, its flexibility, elasticity * * *."

We are in agreement with the view of the Board of Appeals that appellant's disclosure does not differ in any patentable sense from that of the Read patent, and we also agree with the examiner that claim 14 is unpatentable over the French patent to Contencin in view of the patent to Dennin.

We are also in agreement with the view of both Patent Office tribunals that claims 15 and 18 to 21, inclusive, are not supported by appellant's disclosure. Each of these claims contains the element of the tuft of hairs or bristles being "clampingly" held within the socket. As hereinbefore noted, claims 18 to 21, inclusive, were copied from the patent to Carpenter. Appellant insists that there is no difference between his disclosure and that of Carpenter with regard to the element of clamping. This cannot be agreed to. Carpenter positively discloses that the edges of the socket adjacent the tuft of hairs are originally curved slightly outwardly so that, when the clamping pressure is applied, this outward curve will be reversed and tend to curve inwardly, "whereby to clamp the tuft of hairs more securely in place." Appellant's disclosure does not in any way describe this element, nor does it use the term clamping at all.

The Carpenter patent thus differs from appellant's disclosure, and the element of clamping is clearly defined in the former, but not in appellant's disclosure.

Whether this element disclosed and claimed in the Carpenter patent lends patentability to the claims copied by appellant therefrom we need not here inquire, for appellant's application does not disclose the element which supports the element of clamping in the Carpenter patent.

We are also of the opinion that appellant is no more entitled to use the word "clamping" in his claim than Read or Dennin would have been in their respective disclosures, and if they had so used it these claims in appellant's application would not have been patentable over said patents.

We are in full agreement with the Board of Appeals in its view that, to construe the claims as broadly as appellant urges, so as to read upon his disclosure, would render them unpatentable over the cited prior art, while the clamping specifically disclosed in the Carpenter patent is not shown in the prior art.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.